IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LCY CHEMICAL CORP. and LCY SYNTHETIC RUBBER CORP., <br><br> Plaintiffs, <br><br> v. <br><br> KRATON PERFORMANCE POLYMERS, INC., KRATON PERFORMANCE POLYMERS LIMITED, and NY MERGERCO, LLC, <br><br> Defendants. | Civil Action No. 14-1279-GMS |

## MEMORANDUM

### I. INTRODUCTION

Plaintiffs LCY Chemical Corp. and LCY Synthetic Rubber Corp. (collectively, "LCY") filed this action on October 6, 2014 asserting breach of contract against Kraton Performance Polymers, Inc., Kraton Performance Polymers Limited, and NY MergerCo, LLC (collectively, "Kraton"). (D.I. 1, ¶¶ 131–45.) Presently before the court is Kraton's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for *forum non conveniens*. (D.I. 11.) The court heard limited oral argument on the motion during a telephone conference on March 19, 2015. (D.I. 21.) For the reasons that follow, the court will grant Kraton's motion to dismiss. (D.I. 11.)

### II. BACKGROUND

Defendant Kraton Performance Polymers, Inc. is a Delaware corporation with headquarters in Houston, Texas. (D.I. 1, ¶ 33.) Defendant Kraton Performance Polymers Limited is a wholly-owned subsidiary of Kraton Performance Polymers, Inc., and Defendant NY MergerCo, LLC is a

wholly-owned Delaware subsidiary of Kraton Performance Polymers Limited. (*Id.*, ¶¶ 34–35.) LCY is a Taiwanese corporation with headquarters in Taipei, Taiwan, and LCY Synthetic Rubber Corp. is a wholly-owned subsidiary of LCY. (*Id.*, ¶¶ 29, 32.)

On January 28, 2014, Kraton and LCY entered into a "Combination Agreement," whereby Kraton, a producer of styrenic block copolymers ("SBCs"), would combine with LCY's SBC business. (*Id.*, ¶¶ 33, 79.) The Combination Agreement "[constitute[s] an agreement and plan of merger for all purposes of the [Delaware General Corporation Law] and the [Delaware Limited Liability Company Act]." (D.I. 1, Ex. A at § 1.1(b)). The Combination Agreement called for LCY to contribute its SBC Business in exchange for newly issued share in the combined company. (D.I. 1, ¶ 2.) Kraton's stockholders and LCY would each own 50% of the outstanding shares of the combined company. (*Id.*) The combined company would be redomesticated to the United Kingdom. (*Id.*) The transaction was subject to approval by both Kraton's and LCY's respective stockholders, and was anticipated to close in the 4th Quarter of 2014. (*Id.*)

On Monday, June 30, 2014, the Kraton Board sent LCY a notice indicating that it intended to withdraw its recommendation that Kraton's stockholders support the combination, claiming that its action was permitted under the Combination Agreement. (*Id.*, ¶ 16.) On August 4, 2014, LCY notified Kraton that LCY would "not negotiate regarding, or agree to, any revisions to the terms and conditions of the Combination Agreement." (*Id.*, ¶ 20.) LCY alleges that the Kraton Board's "Adverse Recommendation Change" was a breach of the Combination Agreement because it did not comply with the contract's requirement that the Kraton Board determine in good faith that a failure to take such action would reasonably likely be inconsistent with its fiduciary duties. (*Id.*, ¶ 21.)

2

LCY alleges that as a result of Kraton's actions it was left with little choice but to exercise its right under the Combination Agreement to terminate the contract and receive a negotiated termination fee of $25 million dollars. (*Id.*, ¶ 23.) On August 8, 2014, LCY terminated the Combination Agreement and requested that the termination fee be paid to its account. (*Id.*) Kraton refused to pay the termination fee. (*Id.*, ¶ 24.)

LCY's Complaint alleges that Kraton breached the agreement twice. First, Kraton board's exercise of its "fiduciary out" to withdraw its recommendation in favor of the transaction violated Section 5.1(c). (*Id.*, ¶ 134.) Second, Kraton's invocation of an assertion of a material adverse effect ("MAE") and refusal to pay a $25 million termination fee violated Section 9.2(b). (*Id.*, ¶ 143.)

The Combination Agreement contains a forum selection clause that governs LCY's claims. It states:

> Each Party agrees that all claims arising out of or in connection with this Agreement (including the exhibits hereto, the disclosure letters delivered in connection herewith, and the Ancillary Agreements), aside from disputes arising out of Section 2.8 hereof (which disputes shall be subject to the dispute resolution provisions stated in Section 2.9), shall be brought in the Court of Chancery of the State of Delaware . . . or, if the Court of Chancery does not have subject matter jurisdiction, the federal court sitting in the State of Delaware.

(D.I. 1, Ex. A at § 9.1(a).)

## III. STANDARD OF REVIEW

Courts may treat a motion to dismiss based upon enforcement of a forum selection clause as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] *See Salovaara v.*

---

[1] Kraton's Motion requests dismissal on the basis of *forum non conveniens* as an alternative to a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). In a recent decision, the Supreme Court ruled that "the

3

*Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298–99 (3d Cir. 2001) ("Our holding in *Crescent [Int'l Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944–45 (3d Cir. 1988)] leaves no doubt that a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum."). Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). Under Rule 12(b)(6), the court looks at the facts most favorable to the non-moving party. *See, e.g. Calloway v. Green Tree Servicing, LLC*, 607 F. Supp. 2d 669, 673 (D. Del. 2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). If they do not, the court should dismiss the complaint. *Id.*

Delaware courts "give effect to the plain-meaning of [a] contract's terms and provisions." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010). When a contract is unambiguous, "only the language of the contract itself is considered in determining the intentions of the parties." *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006). "Delaware courts will not distort or twist contract language under the guise of construing it . . . because creating an ambiguity where none exists could, in effect, create new contract rights, liabilities and duties to which the parties had not assented." *Id.*

---

appropriate way to enforce a forum selection clause pointing to a state . . . forum is through the doctrine of *forum non conveniens.*" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*, 134 S. Ct. 568, 580 (2013). The Court expressly declined to consider whether, in a breach of contract suit, a forum selection clause may also be enforced through a motion to dismiss on Rule 12(b)(6) grounds, noting that the parties did not brief that issue. *Id.* at 581. Here, the distinction does not alter the court's analysis.

4

## IV. DISCUSSION

As an initial matter, the parties do not dispute the validity of the forum selection clause. (D.I. 17 at 6.) The only question facing the court is whether the Combination Agreement constitutes a merger agreement such that the Court of Chancery is the proper forum for this action as required by the forum selection clause.

The Court of Chancery can acquire subject matter jurisdiction over a dispute in only three ways: "(1) the invocation of an equitable right; (2) the request for an equitable remedy when there is no adequate remedy at law; or (3) a statutory delegation of subject matter jurisdiction." *Testa v. Nixon Unif. Serv., Inc.*, C.A. No. 3886-VCS, 2008 WL 4958861, at *2 (Del. Ch. Nov. 21, 2008) (citation omitted). Section 111 of the Delaware General Corporation Law ("DGCL") provides that Chancery has subject matter jurisdiction over "[a]ny civil action to interpret, apply, enforce or determine the validity of the provisions of . . . [a]ny agreement, certificate of merger or consolidation, or certificate of ownership and merger governed by §§ 251–253, §§ 255–58, §§ 263–264, or § 267." 8 *Del. C.* § 111(a)(6). Section 264, at issue here, governs mergers or consolidations of a Delaware corporation with a limited liability company.

LCY argues that Kraton is attempting to confer statutory jurisdiction in the Chancery Court where none exists. (D.I. 17 at 8.) LCY asserts that the Combination Agreement effects an asset exchange rather than a merger and, therefore, Chancery court does not have subject matter jurisdiction under § 111(a)(6). (*Id.*) LCY asks the court to determine that the Combination Agreement is not a merger agreement for purposes of Section 264 and deny Kraton's motion to dismiss accordingly. (*Id.* at 9.)

5

Kraton states that LCY's claims "fall squarely within Section 111's grant of jurisdiction to the Court of Chancery." (D.I. 12 at 8.) Focusing on the language of the Combination Agreement, Kraton asserts that "under the plain language of the contract, the *entire* Combination Agreement is an 'agreement and plan of merger for all purposes of the DGCL", and in particular Section 264." (*Id.* at 9.) Kraton notes that the forum selection clause contains an enumerated exception which carves out Section 2.8 and, had the parties intended to, they could have contracted to include other exceptions. (*Id.*) Kraton concludes that the forum selection clause should be applied to the Agreement as a whole. (*Id.*) In its reply brief, Kraton concedes that there are two distinct aspects to the Agreement—an asset-exchange and a merger—but asserts that the forum selection clause should be applied to the entire agreement. (D.I. 18 at 7.)

The parties have, at times, used Combination Agreement and Merger interchangeably. For example, in the Complaint LCY stated ". . . Kraton's management and advisors tried to engage with LCY . . . to renegotiate the terms of the merger." (D.I. 1, ¶ 127.) Review of the Combination Agreement itself also leads to the conclusion that the agreement necessarily included a merger. Specifically, Section 1.1 of the agreement states, "[s]ubject to the terms and conditions of this agreement, which shall constitute an agreement and plan of merger for all purposes of the Delaware code and the Delaware Limited Liability Company Act."

The court notes that the claims asserted by LCY relate exclusively to the asset-exchange provisions of the agreement, however, this fact alone does not extinguish proper application of Section 264 as to the entirety of the Combination Agreement. LCY contends that the 147 page agreement and the instant suit "is not about a merger" (Tr. at 9:13–16) but does not provide support for its argument that Chancery cannot consider the terms of the Agreement because the specific

6

provisions of the merger are not at issue in the instant action. The court finds no reason to dissect the Combination Agreement to do so. Accepting that there are multiple transactions contemplated by the Combination Agreement—an asset transfer and a merger—does not preclude, in this court's view, subject matter jurisdiction in the Chancery Court. The issues outlined in LCY's Complaint are sufficiently ancillary to the merger—in light of the Combination Agreement's language—that this matter is more properly addressed, in the first instance, by the Chancery Court. *See Poppiti v. Conaty*, C.A. No. 6920-VCG, 2012 WL 361727, at *1 (Del. Ch. Feb. 1, 2012).[2]

## V.  CONCLUSION

For the reasons stated above, the court will grant Kraton's Motion to Dismiss (D.I. 12) pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: July 23, 2015

UNITED STATES DISTRICT JUDGE

---

[2] It is ultimately the province of the Chancery Court to determine whether the Combination Agreement meets the requirements under the DGCK to provide subject matter jurisdiction. LCY has leave to refile this action if the Chancery Court determines it does not have jurisdiction to hear the matter.

7